**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| EXPERIENCE IT STUDIOS, INC. d/b/a LIFE HERBAL,<br><br>                                    Plaintiff,<br><br>          -against-<br><br>PETA, INC.<br><br>                                    Defendant. | **COMPLAINT**<br><br>**Case No. _____**<br><br>**Hon. Judge _____** |

**COMPLAINT**

NOW COMES Plaintiff, EXPERIENCE IT STUDIOS, INC. d/b/a LIFE

HERBAL (hereafter, "Plaintiff" or "LIFE HERBAL"), by and through its attorneys,

Rakesh M. Amin and Ryan M. Kaiser of Amin Talati, LLC, and complains of Defendant,

PETA, INC. ("PETA" or "Defendant"), as follows:

**NATURE OF THE ACTION**

1.      This is an action for injunctive relief, money damages and attorneys' fees

necessitated by Defendant's deceptive and unlawful Internet marketing scheme in the

brain supplement industry.  Defendant uses unlawful and misleading advertising on

Internet search engines to elevate its own commercial website to the top of search engine

results.  Defendant also misuses Plaintiff's registered trademark in its own advertising.

However, the hallmark of Defendant's advertising scheme is the use of purportedly

"unbiased" third-party reviews and "awards", which Defendant uses to promote its own

product while denigrating all competing products (including Plaintiff's) as inferior.

Defendant has published (or caused to be published) a series of "product reviews" in

which its own product is "voted #1."  Defendant then publishes a barrage of press releases lauding itself and its product as the recipient of such favorable reviews and awards from a purportedly "unbiased" source.  Consumers are left unaware that those "unbiased" third-party reviews were actually drafted and published by Defendant (or its agents).  In reality, the "reviews", "rankings" and "awards" are fictitious and biased, and the websites are nothing more than unlawful competition used to generate higher sales for the Defendant's own competing product.

2.      Defendant has also purchased keyword advertisements using Plaintiff's federally registered PROTAZEN trademark as a keyword on various search engines such as Google and Yahoo!.  As a result, consumers searching for PROTAZEN find Defendant's advertisements posted as "Sponsored Links" (often ranking higher than Plaintiff's official <protazen.com> site).  Defendant's advertisements use inflammatory wording such as "WARNING" (*emphasis in the original*) and "Brain Supplement Scams Revealed."  The consumer who clicks Defendant's "Sponsored Link" is taken to Defendant's site, <HappyCalmFocused.com>, where Defendant's competing product is sold.

3.      Under the guise of free speech, Defendant lures consumers looking for Plaintiff's PROTAZEN product to Defendant's own websites.  Defendant's fabricated "product review" then promotes Defendant's own "award winning" product.

4.      Plaintiff seeks injunctive relief, compensatory and punitive damages, as well as payment of its reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

5.     This is an action for violations of the Lanham Act, as well as various acts of unfair competition and commercial disparagement.  This Court has jurisdiction over the subject matter of the action under 15 U.S.C. § 1121, 28 U.S.C. § 1338, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

6.     This Court has jurisdiction over Defendant because Defendant has sufficient minimum contacts with this State and the maintenance of this suit in this Court does not offend traditional notions of fair play and substantial justice.  Such contacts include, but are not limited to:  Defendant advertises using testimonials of customers from Illinois; Defendant bases the complained-of "product reviews", in part, upon work that Defendant purportedly commissioned from attorneys located in the Northern District of Illinois (and who are likely to be witnesses in this case); Upon information and belief, Defendant knowingly markets and places its products in the stream of commerce for consumption by citizens of the Northern District of Illinois; Upon information and belief, Defendant solicits customers and does business generally within this forum; and Defendant maintains an interactive website promoting its Product to citizens of the Northern District of Illinois.

7.     Venue in this district is proper pursuant to 28 U.S.C. §1391. Defendant is a corporation subject to personal jurisdiction within the Northern District of Illinois.

## THE PARTIES

8.     Plaintiff is an Oklahoma Corporation, having its principal place of business at 8324 S Toledo Ave., Tulsa, OK 74137.  LIFE HERBAL sells dietary supplements, namely its well-known PROTAZEN® product.

9.     Upon information and belief, Defendant is a Nevada corporation having its principal place of business at 375 N. Stephanie St., Suite 1411, Henderson, NV 89014. Defendant, markets and sells dietary supplements, including a brain supplement called "PETA HAPPY CALM FOCUSED" (hereinafter, "HCF") which is a competing product of PROTAZEN.

### FACTS COMMON TO ALL CLAIMS FOR RELIEF

10.     Plaintiff sells a natural supplement under the brand name PROTAZEN, which is dedicated to the promotion of mental health.

11.     Plaintiff has advertised its PROTAZEN product extensively, and sells primarily over the Internet.

12.     As a result of its extensive promotional activities, Plaintiff has created substantial good will in its PROTAZEN trademark.  Consumers associate the PROTAZEN mark with high quality supplement products which originate from Plaintiff.

13.     Because Plaintiff's marketing of PROTAZEN is primarily Internet-based, Plaintiff has an especially compelling need to maintain an online presence that allows it to effectively disseminate accurate and truthful information to consumers.

14.     Plaintiff also owns a federal registration for its PROTAZEN trademark (U.S. Reg. No. 3,434,969).  *See, PROTAZEN Registration*, EXHIBIT 1.  Plaintiff's federal trademark registration is valid and subsisting, and Defendant is aware of its existence.

### Defendant's Websites

15.     Defendant owns three (3) websites: <happycalmfocused.com>; <brainsciencereviews.com>; and <naturalandhealthytoday.com>.

4

16.     The site <www.happycalmfocused.com> is Defendant's "main" site.  This is where Defendant's HCF Product is sold.

17.     Defendant is identified as the owner of <www.happycalmfocused.com>.  *See*, *HappyCalmFocused.com WHOIS*, <u>EXHIBIT</u> 2 (while the WHOIS report lists "The HCF Company" as registrant, upon information and belief, no such entity exists, and "The HCF Company" is a "doing business as" name for Defendant).

18.     The site <www.brainsciencereviews.com> is also controlled and owned by Defendant, though Defendant uses a proxy service to hide its identity as the true owner of <www.brainsciencereviews.com>.  *See*, *BrainScienceReviews.com WHOIS*, <u>EXHIBIT</u> 3.

19.     The site <www.naturalandhealthytoday.com> is also controlled and owned by Defendant, though Defendant uses a proxy service to hide its identity as the owner of this domain name.  *See*, *NaturalandHealthyToday.com WHOIS*, <u>EXHIBIT</u> 4.

**www.BrainScienceReviews.com**

20.     Defendant has surreptitiously registered the <BrainScienceReviews.com> domain name using a third-party proxy service.  However, the website located at <BrainScienceReviews.com> is sponsored and controlled by the Defendant, and the content therein was created by Defendant or its agents.

21.     <BrainScienceReviews.com> touts itself as the "Official Ranking Site for Brain Supplements."  It was purportedly created by a "team of dedicated medical professionals . . . committed to giving you our unbiased opinion in officially ranking and helping you choose the best brain supplement."  *See*, *<BrainSciencereviews.com>*, <u>EXHIBIT 5</u> at p.1.

22.     The opinions expressed on <BrainScienceReviews.com> are not "unbiased."  In fact, the entire site is an advertisement which was created, published or sponsored by Defendant or Defendant's agent.

23.     <BrainScienceReviews.com> provides a list of doctors who make up the "Advisory Board" responsible for conducting the "product reviews."  *See*, <u>EXHIBIT</u> 5. Upon information and belief these doctors either do not exist or their qualifications have been falsified.  Upon information and belief, the doctors listed on <BrainScienceReviews.com> did not conduct the "product reviews" represented on the site.

24.     At least one doctor on the "Advisory Board" (Dr. Fulio Lidino) is advertised as being a "Professor at the University of Miami Miller School of Medicine." However, a search of that institution's Faculty Directory indicates that Dr. Lidino is not on the faculty.  *See*, *U. of Miami Faculty Search*, <u>EXHIBIT</u> 6.

25.     Defendant does not disclose its affiliation with the <BrainScienceReviews.com> site.  Doing so would greatly undermine the effectiveness of Defendant's advertising message (*i.e.* a seemingly independent and un-biased reviews site which ranks Defendant's product at the "#1 Doctor Recommended" product). Defendant has mislead consumers into believing that the site is entirely unbiased and independent, when in fact it was created by, and is controlled and owned by Defendant.

26.     <BrainScienceReviews.com> uses Plaintiff's registered PROTAZEN trademark as a "keyword" META tag in its HTML coding, in order to boost its own search engine ranking when consumers search for Plaintiff's product.  *See*, *BrainScienceReviews.com HTML Coding*, <u>EXHIBIT</u> 7 at p. 1.

27.     In an attempt to give the impression that doctors conducted the "product reviews" featured on <BrainScienceReviews.com>, photographs of people in lab coats with stethoscopes and clipboards are displayed behind each of the products. *See*, EXHIBIT 5 at pp. 3-21.  Upon information and belief, the people in those photos are not doctors, and the "product reviews" featured on the site were not conducted by doctors.

28.     Defendant's HAPPY CALM FOCUSED product was given the top ranking and an entirely positive review. *Id*.  In fact, the HCF Product was awarded the "#1 Doctor Recommended Supplement" award. *Id*.  Upon information and belief, the "#1 Doctor Recommended Supplement" award is a fictitious award, created solely for this website and the promotion of Defendant's product.

29.     On <BrainScienceReviews.com>, every product besides Defendant's is given a negative review. *Id*.  Each review (other than Defendant's product) ends in the same manner:  a list of "other serious concerns that brought the rating down."  Defendant then makes gratuitous use of defamatory terms such as "primitive" and "illegal" to describe its competitors' products and business practices. *Id*.

30.     <BrainScienceReview.com> is peppered with links to Defendant's <HappyCalmFocused.com> site, where the HCF Product is sold. *Id*.

31.     Defendant reproduces the entire "review" on its <HapyCalmFocused.com> site, touting its superior ranking from a supposedly independent and unbiased source. *See*, *HappyCalmFocused.com*, EXHIBIT 20.

**www.NaturalAndHealthyToday.com**

32.     Defendant has surreptitiously registered the <NaturalAndHealthyToday.com> domain name using a third-party proxy service.

However, the website located at <NaturalAndHealthyToday.com> is sponsored and controlled by the Defendant, and the content therein was created by Defendant.

33.     <NaturalAndHealthyToday.com> purports to be the website of an "alternative health magazine."  *See, NaturalAndHealthyToday.com*, <u>EXHIBIT</u> 8 at p. 1.

34.     <NaturalAndHealthyToday.com> contains absolutely no information about the publisher of "Natural and Healthy Today" magazine.  Upon information and belief, this is because the publication does not exist.  It is a fictitious magazine created and used by Defendant as a ruse to mislead consumers by giving false credibility to the "review" and ranking of Defendant's HCF Product.

35.     The <NaturalAndHealthyToday.com> domain name was registered over two (2) years ago, yet contains only two "issues" of content.  *Id.*

36.     Except for the "Brain Supplement Review" article discussed *infra*, not a single article on <NaturalAndHealthyToday.com> was written by the publisher of "Natural and Healthy Today."  The "articles" appear to be nothing more than filler, published merely to give the "magazine" the look of legitimacy.  The articles are merely copies from other publishers, such as Psychology Today and MSNBC.  Upon information and belief, Defendant does not have permission to reproduce and publish this material, and is infringing on those third-parties' copyrights by doing so.

37.     Upon information and belief, Defendant created an entire fictitious magazine (*i.e.* Natural and Healthy Today) solely to publish a "Brain Supplement Review" article in an effort to promote its own HCF Product.

38.     The "Brain Supplement Review" article boasts being the product of "Over 12 Years of Research and Reviews."  *Id*.  Upon information and belief, this statement is false.

39.     The "Brain Supplement Review" article follows the same *modus operandi* of the <BrainScienceReview.com> site:  Readers are mis-lead by a fictitious ranking and review system that rates every product except Defendant's as inferior.

40.     Once again, Defendant's product earns the top spot.  It is voted "#1" and receives the "#1 Brain Program Award."  Upon information and belief, the "#1 Brain Program Award" is an entirely fictitious award, created solely for the promotion of Defendant's product.

41.     The <NaturalAndHealthyToday.com> site uses a "five star" rating system based on several objective criteria.  Defendant's product is given a "five-star" rank in each of the criteria, despite that fact that several other products meet or exceed Defendant's product.  For example, Defendant's product receives five stars for the "price" factor.  Defendant's product is listed as $39.95 with $9.95 shipping and handling.  *See*, EXHIBIT 8 at p. 10.  However, the NEURO CLEAR product (ranked #20) received a one-and-a-half stars for a price of $31.95 with $5.95 shipping and handling.  *See*, EXHIBIT 8 at p. 27.

42.     <NaturalAndHealthyToday.com>is peppered with links to Defendant's <HappyCalmFocused.com> site.

43.     Defendant then reproduces the entire "Brain Supplement Review" article on its HapyCalmFocused.com site, touting its superior ranking from a supposedly independent and unbiased source.

**Defendant's Wrongful Search Engine Activity**

44.     Plaintiff's main source of business is online consumers searching for its PROTAZEN product via web search engines such as Google and Yahoo!.

45.     Google, Yahoo and other companies operate Internet search engines which allow Internet users to locate websites that correspond with entered "keywords," or search terms.  By using search engines such as Google and Yahoo, Internet users enter the subject matter they are interested in, the companies they are looking for, or the goods and services they wish to buy. As part of its business, Google offers a keyword-triggered advertising program called "AdWords."  AdWords enables advertisers to purchase certain keywords. Then, when an Internet user enters those keywords in Google's search engine, the program generates links, known as "Sponsored Links," to the advertisers' websites.  Sponsored links appear at the top and on the margins of Google's search-result pages. In many instances, the search results pages are designed so that the "Sponsored Link" display is inconspicuous, confusing and ambiguous so it is not apparent who "sponsors" these links and whether a sponsor of the link is associated in any way with the company that is the subject of the search.  Whenever an Internet user clicks on a Sponsored Link, the corresponding advertiser must pay Google. The same or substantially similar policies also hold true for other search engines such as Yahoo, MSN, and AOL.

46.     Defendant has paid for the keyword "PROTAZEN" so that links to Defendant's <HappyCalmFocused.com> site appear as "Sponsored Links" when a consumer searches for "PROTAZEN."  *See*, *Google Search Results*, <u>EXHIBIT</u> 9; and *Yahoo Search Results*, <u>EXHIBIT</u> 10.

47. Defendant's "Sponsored Link" advertisement reads in part: "WARNING . . . Brain Supplement Scams Revealed." *Id*. Thus, consumers searching for Plaintiff's PROTAZEN product are subjected to Defendant's false and defamatory "WARNING", with a link to Defendant's own commercial website where its own competing product is promoted and sold.

48. Defendant's use of Plaintiff's registered trademark and defamatory advertisements has created a likelihood of confusing consumers, and has negatively affected the reputation of Plaintiff and the PROTAZEN brand.

**Defendant's Wrongful Conduct on Third Party Websites**

49. Defendant has engaged in the systematic and continuous posting of "press releases" linking to its <HappyCalmFocused.com> site, and touting its superior ranking from <BrainScienceReviews.com> and Natural and Healthy Today magazine. *See, e.g. Free-Press-Release.com*, EXHIBIT 11 (May 14, 2010); and *Free-Press-Release.com*, EXHIBIT 12 (March 22, 2010).

50. Defendant's press-releases often feature Plaintiff's PROTAZEN trademark. For example, a May 14, 2010 press release headlines: "Visit now the most up to date news about Protazen for free!" *See* EXHIBIT 11. The press release then links to <HappyCalmFocused.com>, where Defendant has reproduced the "product review" from <BrainScienceReviews.com>. Incredibly, Defendant's CEO proclaims how he was "pleasantly surprised" to learn that the <BrainScienceReviews.com> ranked *his* product as "#1." *Id*. To consumers, Defendant's surprise at such a glowing review appears to be warranted given that the Better Business Bureau (a *truly* unbiased third party) recently provided Defendant with a rating of "F". *See*, *BBB Rating*, EXHIBIT 13. Once again,

consumers searching for PROTAZEN are directed to Defendant's own <HappyCalmFocused.com> site via Defendant's predatory and premeditated press releases.

51.    A review of the website <Free-Press-Release.com> reveals Defendant's systematic pattern of posting similar press releases concerning all of the other products purportedly "reviewed". *See, Free-Press-Release.com*, <u>EXHIBIT</u> 14 (showing dozens of all press releases posted on Free-Press-Release.com by "Happy Calm Focused").

52.    Defendant's business model also involves hiring and paying third parties to draft and post articles specifically about PROTAZEN, with links back to Defendant's <HappyCalmFocused.com> site.  In a "Help Wanted" advertisement posted on <ODesk.com>, Defendant is currently seeking a "Sales and Marketing" consultant to perform the following tasks for Defendant:  "Write and submit articles; Create and submit press releases; Backlinking; Blog Commenting; Video and Video submission." *See, ODesk Listing*, <u>EXHIBIT</u> 15 at pp. 1-2.

53.    An article posted by one of Defendant's agents, "Thea Smith," boasts the title "Protazen is the Most Effective Antidepressant."  It goes on to provide a short and positive review of PROTAZEN, then concludes by stating "[f]or more information, please visit *our* website <http://happycalmfocused.com/resources/naht-review.php>" (*emphasis added*).  *See, T. Smith Article*, <u>EXHIBIT</u> 16 at p. 2.  This article consumers into believing that it was sponsored by Plaintiff, when in fact, it links back to Defendant's own commercial site, where PROTAZEN (and dozens of other products) receive an inferior review to that of Defendant's product.

54.     A search for other articles written by Ms. Smith reveals that she has published dozens of similar articles about other supplements (all pointing back to Defendant's <HappyCalmFocused.com> site).

55.     A search on YouTube.com for PROTAZEN results in fifty-six (56) videos, all of which are advertisements for Defendant's product with links to HappyCalmFocused.com site.  *See, YouTube Search Results*, <u>EXHIBIT</u> 17.  Upon information and belief, Defendant either published or paid others to publish these advertisements.

56.     Plaintiff issued a cease and desist letter to Defendant, as well as the Proxy address on record as the owner of <BrainScienceReviews.com> and <NaturalandHealthyToday.com>.  Plaintiff's letter demanded that Defendant cease and desist use of Plaintiff's trademark, and remove all false and misleading references to Plaintiff's product.  *See, Cease and Desist Letter and Defendant's Response*, <u>EXHIBIT</u> 18 at pp. 1-2.

57.     Plaintiff received a response letter from the publishers of Natural and Healthy Today Magazine.  *Id* at pp. 3-4.  Not surprisingly, the return address for "Natural and Healthy Today" magazine is identical to Defendant's address.  In its letter Defendant (under the guise of Natural and Healthy Today Magazine) cited freedom of speech as its justification.  *Id*.  The letter also implied that Defendant has the ability to wield the enforcement power of the U.S. Food and Drug Administration, threatening that if Plaintiff chose to pursue a legal action against it, Defendant would summon the FDA to "send you a 1,000,000 lawsuit or jail time."  *Id*.  This was the last communication between the Parties.

## COUNT I
### (Infringement of a Registered Trademark – 15 U.S.C. § 1114)

58.     Plaintiff repeats and re-alleges paragraphs 1-57 above, as if set forth in full

herein.

59.     PROTAZEN is a valid, protectable well-known and federally-registered

trademark.

60.     Plaintiff owns all rights, title, interest and goodwill associated with the

PROTAZEN mark.

61      At all times complained of herein, Defendant was aware of Plaintiff's

rights in the PROTAZEN mark.

62.     Defendant has used the PROTAZEN mark in commerce without

Plaintiff's knowledge or consent.

63.     Defendant has used Plaintiff's trademark in a manner calculated to capture

initial consumer attention and to direct such attention to the Defendant's site, in the

promotion of Defendant's competing product, at the expense of viewers looking for

PROTAZEN and to the detriment of Plaintiff.

64.     Defendant's use of the PROTAZEN mark has been willful, deliberate,

intended to benefit Defendant at Plaintiff's expense, and made in bad faith.

65.     Defendant's use of the PROTAZEN mark are likely to cause confusion

and create initial interest confusion in violation of Plaintiff's rights under 15 U.S.C. §

1114.

66.     As a direct and proximate result of Defendant's conduct, Plaintiff has

suffered damages including, but not limited to loss of goodwill and lost profits.

67.     The quantity and quality of Defendant's actions, as well as the implications on consumer health caused thereby, render this case an "exceptional" case under the Lanham Act.

WHEREFORE, with respect to Count I, Plaintiff respectfully asks this Honorable Court to grant the following relief:

    a)    That Plaintiff be awarded compensatory damages and lost profits in an amount to be determined at trial;

    b)    That Plaintiff be awarded punitive damages in an amount to be determined at trial;

    c)    That Plaintiff be awarded its reasonable attorneys' fees and costs in this action;

    d)    That the Court enter judgment in favor of Plaintiff granting equitable and injunctive relief over the activities complained of; and

    e)    Such other relief as this Court deems to be just and proper.

## COUNT II

### (Product Disparagement -- 15 U.S.C. § 1125(a)(1)(B))

68.     Plaintiff repeats and re-alleges paragraphs 1-67 above, as if set forth in full herein.

69.     Defendant made false and misleading statements of fact about the nature and characteristics of Plaintiff's PROTAZEN product.

70.     Defendant paid for and published advertisements which are triggered by consumers searching for Plaintiff's PROTAZEN product

71.     Defendant's advertisements state: "WARNING . . . Brain Supplement Scams Revealed.

72.     By way of misleading and false statements of fact, Defendant asserts to consumers that Plaintiff's PROTAZEN product is a "scam," that PROTAZEN is somehow unsafe, and that Defendant's product is superior to Plaintiff's PROTAZEN product.

73.     Defendant has caused its false and misleading statements to enter interstate commerce.

74.     Defendant's statements have a tendency to deceive, and upon information and believe have in fact deceived, a substantial segment of its audience.

75.     The deception caused by Defendant's statements is material in that it is likely to influence purchasing decisions.

76.     Defendant's conduct has been willful, wanton, and reckless and in total disregard for Plaintiff's rights.

77.     Plaintiff has been, and is likely to be, injured as a result of Defendant's statements.

WHEREFORE, with respect to Count I, Plaintiff respectfully asks this Honorable Court to grant the following relief:

a)      That Plaintiff be awarded compensatory damages and lost profits in an amount to be determined at trial;

b)      That Plaintiff be awarded punitive damages in an amount to be determined at trial;

c)      That Plaintiff be awarded its reasonable attorneys' fees and costs in this action;

d)      That the Court enter judgment in favor of Plaintiff granting equitable and injunctive relief over the activities complained of; and

e)      Such other relief as this Court deems to be just and proper.

## COUNT III

### (False Advertising -- 15 U.S.C. § 1125(a)(1)(B))

78.      Plaintiff repeats and re-alleges paragraphs 1-77 above, as if set forth in full herein.

79.      Defendant has made numerous false and misleading descriptions or representations of fact in the commercial advertising and promotion of its own HCF Product.

80.      Defendant has caused its false and misleading statements to enter interstate commerce.

81.      Defendant's statements have a tendency to deceive, and upon information and believe have in fact deceived, a substantial segment of its audience.  *See* EXHIBIT 19.

82.      The deception caused by Defendant's false statements is material in that it is likely to influence purchasing decisions.

83.      Defendant's conduct has been willful, wanton, and reckless.

84.      Plaintiff has been and is likely to be injured as a result of Defendant's statements.

WHEREFORE, with respect to Count I, Plaintiff respectfully asks this Honorable Court to grant the following relief:

a) That Plaintiff be awarded compensatory damages and lost profits in an amount to be determined at trial;

b) That Plaintiff be awarded punitive damages in an amount to be determined at trial;

c) That Plaintiff be awarded its reasonable attorneys' fees and costs in this action;

d) That the Court enter judgment in favor of Plaintiff granting equitable and injunctive relief over the activities complained of; and

e) Such other relief as this Court deems to be just and proper.

## COUNT IV

**(Violation of the Deceptive Trade Practices Act of Illinois, 815 ILCS 510/2)**

85.     Plaintiff repeats and re-alleges paragraphs 1-84 above, as if set forth in full herein.

86.     Defendant has made numerous false and misleading representations regarding the characteristics of both Plaintiff's and Defendant's products.

87.     Defendant's false and misleading representations are causing likelihood of confusion or of misunderstanding as to the source, sponsorship approval or certification of Defendant's goods.

88.     Defendant's advertising falsely represents that Plaintiff's product is dangerous, and is a "scam."

89.     Defendant's advertising purports to be independent and "unbiased" when it grants Defendant's product with fake and imaginary awards which were created solely as a marketing gimmick.

90.     Defendant advertises various literal and implied claims that its product is superior to Plaintiff's PROTAZEN product.

91.     Defendant falsely represents that its "review" website is sponsored by Plaintiff, and represents that such site is "one of the Internet's top new PROTAZEN websites."

92.     Defendant claims that its Product and Plaintiff's PROTAZEN product were reviewed by a "team of dedicated medical professionals are committed to giving you our unbiased opinion." Upon information and belief, that statement is entirely false.

93.     Defendant has caused its false, misleading and demeaning statements to enter commerce.

94.     Defendant's statements have a tendency to deceive, and upon information and believe have in fact deceived, a substantial segment of its audience.

95.     Defendant's conduct has been willful, wanton, and reckless.

96.     Plaintiff has been and is likely to be injured as a result of Defendant's statements.

WHEREFORE, with respect to Count I, Plaintiff respectfully asks this Honorable Court to grant the following relief:

a)      That Plaintiff be awarded compensatory damages and lost profits in an amount to be determined at trial;

b)      That Plaintiff be awarded punitive damages in an amount to be determined at trial;

c)      That Plaintiff be awarded its reasonable attorneys' fees and costs in this action pursuant to 815 ILCS 510/3;

d)      That the Court enter judgment in favor of Plaintiff granting equitable and injunctive relief over the activities complained of; and

e)      Such other relief as this Court deems to be just and proper.

## COUNT V

### (Commercial Disparagement)

97.    Plaintiff repeats and re-alleges paragraphs 1-96 above, as if set forth in full herein.

98.    Defendant has made several statements about Plaintiff's goods which are untrue or misleading and are made to influence or tend to influence the public not to buy those goods.

99.    Defendant has shown a pattern or practice of disparaging other competitors by alleging that their products are inferior in quality, dangerous, or "scams." Discovery will show that Defendant has used, and continues to use, other keyword triggering advertisements to disparage and unfairly compete with those competitors in the brain supplement market.

100.    Defendant's statements were made in commerce, and have caused injury to Plaintiff's reputation, as likely the reputations of other customers.

WHEREFORE, with respect to Count I, Plaintiff respectfully asks this Honorable Court to grant the following relief:

a)   That Plaintiff be awarded compensatory damages and lost profits in an amount to be determined at trial;

b)   That Plaintiff be awarded punitive damages in an amount to be determined at trial;

c)   That Plaintiff be awarded its reasonable attorneys' fees and costs in this action;

d)   That the Court enter judgment in favor of Plaintiff granting equitable and injunctive relief over the activities complained of; and

e)   Such other relief as this Court deems to be just and proper.

## COUNT VI

### (Defamation *Per Se*)

101.   Plaintiff repeats and re-alleges paragraphs 1-100 above, as if set forth in full herein.

102.   Defendant has made false representations about Plaintiff and Plaintiff's product.

103.   Defendant false representations constituted an unprivileged publication to numerous third parties, specifically targeting consumers and Plaintiff's customers.

104.   Defendant's false representations accuse Plaintiff of perpetuating a "scam" and being involved in criminal fraudulent activity.

105.     Defendant's false representations assert that Plaintiff's PROTAZEN product is dangerous and requires a warning to consumers.

106.     Defendant's false representations impute a lack of integrity in the discharge of Plaintiff's business operations.

107.     Defendant's statements harm Plaintiff in its profession.

108.     Defendant published its false representations with at least a reckless disregard as to their truth or falsity.

109.     Upon information and belief, Defendant published its false representations with actual malice and intent to harm Plaintiff's reputation.

110.     As a result of Defendant's publication of *per se* defamatory statements, Plaintiff has suffered actual damages including, but not limited to lost sales, costs associated with dealing with and refuting said defamatory statements, and irreparable harm to Plaintiff's good will and reputation.

WHEREFORE, with respect to Count I, Plaintiff respectfully asks this Honorable Court to grant the following relief:

a)     That Plaintiff be awarded compensatory damages and lost profits in an amount to be determined at trial;

b)     That Plaintiff be awarded punitive damages in an amount to be determined at trial;

c)     That Plaintiff be awarded its reasonable attorneys' fees and costs in this action;

d)   That the Court enter judgment in favor of Plaintiff granting

equitable and injunctive relief over the activities complained of;

and

e)   Such other relief as this Court deems to be just and proper

## COUNT VII

**(TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS)**

111.   Plaintiff repeats and re-alleges paragraphs 1-110 above, as if set forth in

full herein.

112.   Plaintiff had a reasonable expectation of entering into a valid business

relationship with one or more individuals or organizations.

113.   Defendant knew of the foregoing expectancy.

114.   Defendant intentionally and unjustifiably interfered to prevent the

expectancy from being fulfilled.

115.   As a result of Defendant's actions, Plaintiff has been damaged.

WHEREFORE, with respect to Count I, Plaintiff respectfully asks this Honorable

Court to grant the following relief:

a)   That Plaintiff be awarded compensatory damages and lost profits

in an amount to be determined at trial;

b)   That Plaintiff be awarded punitive damages in an amount to be

determined at trial;

c)   That Plaintiff be awarded its reasonable attorneys' fees and costs in

this action;

d)      That the Court enter judgment in favor of Plaintiff granting

equitable and injunctive relief over the activities complained of;

and

e)      Such other relief as this Court deems to be just and proper

Dated:  May 18, 2010                              Respectfully Submitted,


                                                  _/s/ Ryan M. Kaiser_____
                                                  Ryan M. Kaiser
                                                  Rakesh M. Amin
                                                  Amin Talati, LLC
                                                  225 N. Michigan Ave., Suite 700
                                                  Chicago, IL 60601
                                                  Ph: (312) 327-3328
                                                  Fax: (312) 884-7352

                                                  Attorneys for Life Herbal, Inc.